UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FELICIA ALFORD,

       Plaintiff,

v.                           Case No. 8:25-cv-94-VMC-SPF

PASCO-PINELLAS HILLSBOROUGH
COMMUNITY HEALTH SYSTEM, INC.
d/b/a ADVENTHEALTH WESLEY
CHAPEL,

       Defendant.
_____/

## ORDER

    This matter is before the Court on consideration of Defendant Pasco-Pinellas Hillsborough Community Health System, Inc.'s ("AdventHealth") "Motion to Dismiss Counts I through IV of Plaintiff's Second Amended Complaint, as to the Claims Brought Pursuant to Title VII and the FCRA, with Prejudice" (Doc. # 49), filed on June 27, 2025. Plaintiff Felicia Alford responded on July 24, 2025 (Doc. # 60), and, with leave of Court, AdventHealth filed a reply on August 11, 2025. (Doc. # 63). For the reasons that follow, the Motion is granted.

I.   **Background**:

   A.    **Ms. Alford's Tenure at AdventHealth**

   Ms. Alford, who is Black and gay, worked as a "PRN Social Worker Care Manager at [AdventHealth's] hospital in Wesley Chapel" from February 2021 until her termination in June 2024. (Doc. # 45 at ¶¶ 3, 6, 38, 56). Ms. Alford claims that she "was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of her race [and] sexual orientation, and has been retaliated against after reporting this discrimination." (Id. at ¶ 7).

   Ms. Alford alleges as follows. In July 2021, after Ms. Alford informed Jennifer Iglesias, the Director of Care Management, that she was unable to work her next shift, Ms. Iglesias "falsely wrote [Ms. Alford] up for alleged performance issues." (Id. at ¶¶ 8-10). Employees who were not Black "were not subjected" to such "corrective action." (Id. at ¶ 11). In February 2022, after Ms. Iglesias learned that that Ms. Alford had a girlfriend, Ms. Iglesias's "behavior towards [Ms. Alford] worsened due to [her] sexual orientation." (Id. at ¶ 12). On May 24, 2022, Sheila Hammond, the Supervisor of Care Management, denied Ms. Alford's request to take the afternoon off "to handle a family emergency." (Id. at ¶¶ 8,13). Ms. Alford then informed Ms.

2

Iglesias that she needed to leave due to the urgent situation. (Id. at ¶ 14). "In contrast, non-black and non-gay employees were allowed to leave work early to handle appointments and emergencies." (Id. at ¶ 15).

Although Ms. Alford made a complaint to the human resources department in June 2022 regarding Ms. Iglesias's "disparate treatment and harassment," AdventHealth "took no remedial action." (Id. at ¶¶ 16-17). Two days later, Ms. Alford "was written up by" Ms. Iglesias based on false allegations that Ms. Alford was disrespectful when she spoke with Ms. Iglesias about needing to leave work early. (Id. at ¶ 18).

Ms. Alford made a second complaint to human resources in December 2023 in which she reported that she "was not allowed to participate in her annual self-evaluation" and that AdventHealth "never responded to or took any remedial action in regards to her June 2022 complaint." (Id. at ¶ 21).

In January 2024, Ms. Alford heard Ms. Iglesias tell another employee that "she was 'over' [Ms. Alford] and that she wished [Ms. Alford] 'would quit.'" (Id. at ¶ 22). Ms. Iglesias then grabbed Ms. Alford's arm to stop her from calling human resources. (Id.). After this incident, Ms. Alford was required to sit with her supervisor, Ms. Hammond, during her shifts. (Id. at ¶ 23). No other employees were

subject to such restrictions. (Id. at ¶ 24). No remedial action was taken against Ms. Iglesias. (Id. at ¶ 25).

In February 2024, Ms. Iglesias issued Ms. Alford "another undeserved corrective action" "under the pretext that [Ms. Alford] had come to work early, stayed out for lunch 15 minutes too late, and failed to complete 22 evaluations (an arbitrary standard number for daily evaluations which had been applied only to [Ms. Alford] and not her coworkers)." (Id. at ¶ 26). Employees who were not Black or gay "came to work early at times" and "often went over their 30-minute allotted time for lunch breaks but were not disciplined for doing so." (Id. at ¶ 27).

AdventHealth did not schedule Ms. Alford to work any days in March 2024 and only scheduled her for two days in April and May 2024. (Id. at ¶¶ 29-30, 32). Ms. Alford then filed a charge ("Charge One") with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been retaliated against for filing two complaints about Ms. Iglesias. (Doc. # 49-1 at 1-2).

Ms. Alford alleges that AdventHealth did not schedule her for any days in June 2024 in "retaliation for her participation in protected activity." (Doc. # 45 at ¶ 36). Ms. Alford alleges that other similarly situated employees who were not Black or gay "were given work hours." (Id.). Ms.

4

Alford further alleges that she was fired on June 15, 2024, purportedly for not working the minimum number of shifts per month and failing "to keep her leadership apprised of her availability." (Id. at ¶¶ 38-39). However, Ms. Alford claims that she "regularly and timely submitted her availability each month and despite being available [for the minimum number of shifts], was regularly denied the opportunity to work based on her race, sexual orientation or in retaliation for her protected activity." (Id. at ¶ 42).

### B.    The EEOC and FCHR Charges

Ms. Alford filed Charge One with the EEOC and Florida Commission on Human Relations ("FCHR") on May 10, 2024. (Doc. # 49-1 at 1-2). Charge One alleges only that AdventHealth retaliated against Ms. Alford for filing complaints about Ms. Iglesias. (Id.). Charge One states as follows:

> During my tenure with [AdventHealth], I've had to file two internal HR complaints against my manager Jennifer Iglesias for retaliation, disparities, harassment, bullying and intimidation. The last complaint was on December 17, 2023, because Ms. Iglesias falsified the face-to-face discussion for my yearly performance evaluation. Then on January 4, 2024, there was a physical altercation between Ms. Iglesias and myself because I overheard her speaking to the secretary and verbalized, "she wish I would quit because she was so over me."
>
> On February 2, 2024, I received a corrective action plan for coming to work early before scheduled time, using my personal cell phone on a personal call and work performance issues. I was required to sit with my supervisor, Sheila Hammond every single

> time I was scheduled to work and there was no
> training or assistance. My schedule was
> significantly reduced down to 0-1 day per month,
> contrary to the policy requirements for PRN which
> requires a minimum of 2 weekdays and 2 weekend days.
>
> I believe that I was retaliated against in
> violation of the Title VII of the Civil Rights Act
> of 1964, as amended.

(Id.).

Ms. Alford filed a second charge with the EEOC and FCHR ("Charge Two") on July 8, 2024. (Doc. # 49-1 at 3-5). Charge Two elaborates on the retaliation alleged in Charge One. (Id.). Regarding Ms. Alford's claim that she had to sit with Ms. Hammond, Charge Two alleges that "other PRN employees . . . could select where they sat." (Id. at 3). Charge Two further states as follows:

> After the [above-described] incidents, my submitted
> availability days were significantly reduced to 2
> days per month or none at all, while other PRN
> employees were asked by Jennifer Iglesias to work
> more days and was [sic] paid incentive bonus pay.
> Despite compliance to the Advent Health policy CW
> HR 244 of submitting required shift availability
> per month since February 15, 2021, I was discharged
> without receiving any coaching or corrective action
> that I violated the policy.
>
> I was discharged from Advent Health Wesley Chapel
> Hospital on June 14, 2024.
>
> I believe that I was retaliated against in
> violation of Title VII of the Civil Rights Act of
> 1990, as amended, and all applicable state
> statutes.

(Id. at 3-4).

Neither charge asserts claims of race or sex discrimination or mentions Ms. Alford's membership in any protected class. (Id. at 1-4).

### C.   **Procedural History**

Ms. Alford's second amended complaint asserts five claims against AdventHealth: race-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 et seq., and 42 U.S.C. § 1981 (Count I); hostile work environment based on race in violation of Title VII, the FCRA, and Section 1981 (Count II); sex-based discrimination in violation of Title VII and the FCRA (Count III); hostile work environment based on sex in violation of Title VII and the FCRA (Count IV); and retaliation in violation of Title VII, the FCRA, and Section 1981 (Count V). (Doc. # 45).

AdventHealth moves to dismiss Counts I and II to the extent they are brought under Title VII and the FCRA, as well as Counts III and IV. (Doc. # 49). The Motion is fully briefed (Doc. ## 60, 63), and is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the

plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

A "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

III. **Analysis**

A.    **Failure to Exhaust Administrative Remedies**

AdventHealth argues that Ms. Alford failed to exhaust her administrative remedies with respect to the Title VII and FCRA claims in Counts I through IV because her discrimination and hostile work environment claims are outside the scope of the Charges she filed with the EEOC and FCHR, which allege only retaliation. (Doc. # 49 at 6-9). In response, Ms. Alford argues that the Title VII and FCRA claims in Counts I through IV are not subject to dismissal as they "grew out of" the facts alleged in the Charges. (Doc. # 60 at 3-4). The Court agrees with AdventHealth.

The Court notes that AdventHealth's reply contains two exhibits offered in support of AdventHealth's claim that the EEOC "investigations were limited to the retaliation claims." (Doc. # 63 at 5; Doc. ## 63-1, 63-2). However, the Court has not considered these exhibits as they were offered for the first time in AdventHealth's reply and were not offered to rebut a point raised by Ms. Alford in opposition. See Parker v. Alcon Mgmt. S.A., No. 21-14068, 2022 WL 3905872, at *3 (11th Cir. Aug. 31, 2022) (explaining that new evidence "is not properly considered if offered for the first time in support of a reply brief" unless it is "offered to rebut a point raised in an opposition brief").

9

Title VII prohibits employers from discriminating against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The [FCRA] was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII." Wilbur v. Correctional Services Corp., 393 F.3d 1192, 1195 n.1 (11th Cir. 2004). "Consequently, a separate analysis of FCRA claims in a Title VII action is not required." Thomas v. Miami Dade Pub. Health Tr., 369 F. App'x 19, 21 (11th Cir. 2010).

"An employee alleging his employer intentionally discriminated against him may pursue three archetypal Title VII claims:"

> (1) The disparate-treatment claim, *i.e.*, a claim that an employee has suffered a tangible employment action based on race or other prohibited characteristics.

> (2) The hostile-environment claim, *i.e.*, a claim stemming from mistreatment based on a protected characteristic that is sufficiently severe or pervasive that it can be said to alter the terms, conditions, or privileges of employment.

> (3) The retaliation claim, *i.e.*, a claim stemming from retaliation for protected conduct where the mistreatment well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Jimenez v. U.S. Att'y Gen., 146 F.4th 972, 988 (11th Cir. 2025) (internal quotation marks omitted).

10

"Before filing a Title VII action, a plaintiff must file a charge of discrimination with the EEOC." Patterson v. Georgia Pac., LLC, 38 F.4th 1336, 1345 (11th Cir. 2022). "The purpose of this exhaustion requirement is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Gregory v. Ga. Dep't of Hum. Res., 355 F.3d 1277, 1279 (11th Cir. 2004) (internal quotation marks omitted). "With this purpose in mind, [the Eleventh Circuit] . . . has noted that judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." Batson v. Salvation Army, 897 F.3d 1320, 1327 (11th Cir. 2018) (internal quotation marks omitted).

In analyzing "the degree to which a civil complaint may vary from the administrative proceedings," a court "must balance two competing interests." Jimenez, 146 F.4th at 989. On one hand, courts are "extremely reluctant to allow procedural technicalities to bar claims brought under discrimination statutes." Id. (internal quotation marks omitted). "To that end, . . . the scope of an EEOC complaint should not be strictly interpreted." Batson, 897 F.3d at 1327

11

(internal quotation marks omitted). On the other hand, "allowing plaintiffs to allege new acts of discrimination for the first time in federal court would circumvent the entire administrative enforcement mechanism" designed "to allow federal agencies the first opportunity to investigate discriminatory employment practices." Jimenez, 146 F.4th at 989-90 (internal quotation marks and citation omitted).

"Because of that exhaustion requirement, a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Patterson, 38 F.4th at 1345 (internal quotation marks omitted). The "'proper inquiry' is whether the '[plaintiff's] complaint [is] like or related to, or grew out of, the allegations contained in [the] EEOC charge.'" Batson, 897 F.3d at 1328 (quoting Gregory, 355 F.3d at 1280). "The facts alleged in the charge matter most for determining what can reasonably be expected to grow out of an EEOC charge; the legal theory the charging party articulates is far less important." Patterson, 38 F.4th at 1345.

Most commonly, the Eleventh Circuit has "allowed retaliation claims to move forward when plaintiffs' discrimination charges also stated facts from which a reasonable EEOC investigator could have concluded that what [they] had complained about is retaliation." Jimenez, 146

F.4th at 990 (internal quotation marks omitted); see Gregory, 355 F.3d at 1280 (holding that district court did not err in finding that plaintiff's "retaliation claim was not administratively barred by her failure to mark the retaliation space on the EEOC template form" as the "facts alleged in her EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination"); Patterson, 38 F.4th at 1345–46 (holding that plaintiff administratively exhausted her claim that she was terminated in retaliation for her testimony against her former employer in a pregnancy discrimination lawsuit even though the EEOC charge "largely focuse[d] on race discrimination" as it also stated facts about how the defendant's HR director questioned plaintiff regarding her testimony "from which a reasonable EEOC investigator could have concluded that what she had complained about is retaliation because of her giving the Memorial Hermann deposition." (internal quotation marks omitted)); Batson, 897 F.3d at 1328 (holding that plaintiff's EEOC charge alleging that defendant failed to provide a reasonable accommodation under the ADA was sufficient to exhaust her remedies regarding her ADA retaliation claim as the facts alleged in the charge — that plaintiff "suffered discrimination because of her

disability, that she had requested an accommodation in February 2013, and that her request was denied" and she was terminated — were "sufficiently 'related to' [plaintiff's] retaliation claim to satisfy the exhaustion requirement").

Here, however, the Charges only allege that Ms. Alford was retaliated against for filing HR complaints against Ms. Iglesias. (Doc. # 49-1 at 1-4). In Charge One, Ms. Alford wrote "Retaliation" in the section of the template form that asked for the basis of the alleged discrimination. (Id. at 1, 3). Neither charge mentions that Ms. Alford is Black or gay or identifies the races or sexual orientations of any of her coworkers. (Id. at 1-4).

Nevertheless, Ms. Alford argues that she administratively exhausted her claims of race and sex discrimination as they "are the logical and necessary outgrowth of the facts she alleged" in the Charges regarding "disparate treatment and hostility." (Doc. # 60 at 4). Ms. Alford contends that the Charges contain "a forest of facts pointing directly toward discriminatory treatment: direct comparisons to 'other PRN employees,' systemic 'disparities,' and targeted 'harassment.'" (Id. at 5). Accordingly, Ms. Alford seeks to analogize the instant case to Gregory, 355 F.3d 1277, and to distinguish it from the case relied upon by

AdventHealth, Penaloza v. Target Corp., 549 F. App'x 844, 848
(11th Cir. 2013). Ms. Alford's arguments are unpersuasive.

Contrary to Ms. Alford's contention, the instant case is
distinguishable from Gregory. In Gregory, the plaintiff, "an
African-American doctor who was hired and then terminated as
a staff psychiatrist" at the defendant's hospital, filed a
complaint alleging, among other things, retaliation in
violation of Title VII. 355 F.3d at 1278. The district court
denied the defendant's motion for summary judgment arguing
that the plaintiff's "retaliation claim should be considered
administratively barred because she had not alleged in her
EEOC discrimination charge that she had been retaliated
against," finding that "although [the plaintiff] had alleged
only race and gender discrimination and had not claimed
retaliation explicitly in her EEOC charge, the exhaustion
requirement was nonetheless satisfied because the retaliation
claim was based on the facts alleged in her discrimination
charge." Id. The Court described the plaintiff's EEOC charge
as follows:

> In the EEOC charge of discrimination filed *without
> the aid of counsel,* Dr. Gregory alleged that she
> was terminated by DHR for "no legitimate reason."
> In that charge, Dr. Gregory: (1) only marked the
> spaces for gender and race discrimination in the
> "charge of discrimination" portion of the template
> form, leaving the "retaliation" space blank; (2)
> indicated that she was hired as a
> physician/psychiatrist on July 15, 1999, and

terminated on February 15, 2000; (3) asserted that she was not given a "legitimate" reason for her termination; and (4) contended that she "believe[d]" that she was discriminated against, as she had been an exemplary employee. Moreover, she asserted that white and male doctors (1) were not required to provide doctor's excuses when they used sick leave, (2) did not have negative performance memoranda placed in their records for arbitrary reasons, and (3) were not subjected to unwarranted termination. Dr. Gregory thus alleged, "I *believe* that I have been discriminated against on the basis of my race (Black American) and my sex (female)."

Id. at 1278-79 (emphasis in original).

In affirming the district court's ruling, the Gregory Court held that the plaintiff's "failure to mark the retaliation space on the EEOC template form" was not dispositive, and that the "facts alleged in her EEOC charge could have reasonably been extended to encompass a claim for retaliation because they were inextricably intertwined with her complaints of race and sex discrimination." Id. at 1280. In other words, the EEOC charge "stated facts from which a reasonable EEOC investigator could have concluded that what [plaintiff] had complained about is retaliation because of her complaints of Dr. Fuller's disparate treatment" of white and male doctors. Id. at 1279-80.

In the instant case, unlike in Gregory, the Charges were devoid of any facts alleging that Ms. Alford was discriminated against based on her membership in a protected class. Although the charges alleged that Ms. Alford had filed

16

complaints against Ms. Iglesias because of, among other things, "disparities" and "harassment," the charges do not contain any facts alleging the basis for such disparities and harassment, such as whether they were due to Ms. Alford's race or sexual orientation. (Doc. # 49-1 at 1, 3). Further, while Charge Two alleged that AdventHealth retaliated against Ms. Alford by significantly reducing her scheduled work hours "while other PRN employees were asked . . . to work more days and [were] paid incentive bonus pay," it did not allege that Ms. Alford was retaliated against because of her race or sexual orientation and did not assert any facts as to the races or sexual orientations of the "other PRN employees." (Id.). As the Charges did not state any facts from which a reasonable EEOC investigator could have concluded that what Ms. Alford had complained about was discrimination based upon race and sexual orientation, Gregory is distinguishable and does not compel a finding that Ms. Alford exhausted her administrative remedies with respect to her Title VII and FCRA claims in Counts I through IV.

Rather, the instant case is analogous to Penaloza, 549 F. App'x 844. In Penaloza, the plaintiff "filed an EEOC charge alleging the following: 'I believe that I am being discriminated against on the basis of my sex; female; pregnancy related, in violation of the Civil Rights Act of

1964, as amended.'" 549 F. App'x at 848. The plaintiff filed suit, and the district court dismissed her disability discrimination claim for failure to exhaust administrative remedies. Id. at 846. In affirming, the Eleventh Circuit determined that "[t]here was no mention of disability discrimination [in the EEOC charge], nor could a disability discrimination claim 'be expected to grow' out of Ms. Penaloza's sex and pregnancy discrimination charge, even on a broad reading of her EEOC complaint." Id. at 848 (quoting Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n.8 (11th Cir. 1994)).

Like in Penaloza, the Charges here do not contain any allegations of the discrimination claimed in Counts I through IV of the second amended complaint. Further, as the Charges do not even mention Ms. Alford's race or sexual orientation, the race and sex discrimination claims alleged in Counts I through IV cannot be reasonably expected to grow out of her retaliation charges. Penaloza, 549 F. App'x at 848; see also Jimenez, 146 F.4th at 990 (holding that district court correctly determined that plaintiff failed to exhaust his administrative remedies for his claims alleging discrimination based on his employer's failure to pay bonuses or promote him as such claims "are not 'like or related to'

the allegations of discriminatory augmentation duty assignments in his EEOC charge").

Here, the allegations of race and sex discrimination in the second amended complaint do not "amplify, clarify, or more clearly focus" the factual allegations set forth in the Charges. Batson, 897 F.3d at 1327 (internal quotation marks omitted). Accordingly, Ms. Alford has failed to exhaust her administrative remedies with respect to the Title VII and FCRA claims in Counts I through IV. See Jimenez, 146 F.4th at 990; Penaloza, 549 F. App'x at 848.

### B. __Further Amendment Would Be Futile__

AdventHealth argues that the Court should dismiss the Title VII and FCRA claims in Counts I through IV with prejudice because such claims are now time-barred. (Doc. # 49 at 9-10). In response, Ms. Alford argues that she should be granted leave to amend if the Court finds dismissal is warranted as she "could add further factual detail to her complaint to make even more explicit the connection between her discrimination claims and the narrative in her EEOC charges." (Doc. # 60 at 6-7). However, Ms. Alford does not address AdventHealth's argument that the claims at issue are time-barred. The Court agrees with AdventHealth that dismissal with prejudice is warranted.

"For a [Title VII] charge to be timely in a deferral state such as Florida, it must be filed within 300 days of the last discriminatory act." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002) (citing 42 U.S.C. § 2000e-5(e)(1)). For an FCRA claim to be timely, a plaintiff must file charges "within 365 days of the alleged violation." Fla. Stat. § 760.11(1); Makere v. Allstate Ins. Co., No. 24-11336, 2025 WL 3022497, at *9 (11th Cir. Oct. 29, 2025).

Here, the latest violation alleged in Charges occurred on June 15, 2024, when Ms. Alford's employment ended. (Doc. # 41-1 at 1-3). More than 365 days have passed since that alleged violation. Any discriminatory acts for which Ms. Alford "did not file a charge with either the EEOC or FCHR within 300 days (for Title VII) or 365 days (for FCRA) are not actionable." Edom v. Chronister, No. 8:20-cv-1624-KKM-AEP, 2021 WL 4244845, at *12 (M.D. Fla. Sept. 17, 2021); Joe's Stone Crabs, 296 F.3d at 1271. As Ms. Alford cannot now file a timely charge with the EEOC or FCHR against AdventHealth, any further amendment of the complaint would be futile. Edmunds v. Asurion, LLC, No. 22-cv-60361-CIV-ALTMAN/Hunt, 2024 WL 620932, at *8, *10 (S.D. Fla. Feb. 14, 2024) (dismissing complaint with prejudice where plaintiff failed to exhaust her administrative remedies and "it was too late for [plaintiff] to remedy this deficiency because" more than

20

300 days had passed since the last discriminatory act); see also Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Pasco-Pinellas Hillsborough Community Health System, Inc. d/b/a AdventHealth Wesley Chapel's "Motion to Dismiss Counts I through IV of Plaintiff's Second Amended Complaint, as to the Claims Brought Pursuant to Title VII and the FCRA, with Prejudice" (Doc. # 49) is **GRANTED.**

(2) Counts I and II, to the extent they allege violations of Title VII and the FCRA, and Counts III and IV of the second amended complaint (Doc. # 45) are **DISMISSED** with prejudice.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of November, 2025.



VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE